Gene M. OSWALT et vir,
Plaintiffs-Appellants,

v.

SCRIPTO, INC., Defendant-Third Party Plaintiff, Appellant,

v.

TOKAI–SEIKI KK, a Japanese corporation, Defendant-Third Party Defendant, Appellee.

No. 77–3296.

United States Court of Appeals, Fifth Circuit.

May 1, 1980.

A. W. Salyars, Joyce Hill, Lubbock, Tex., Paul McCollum, Odessa, Tex., for plaintiffs-appellants.

Donald M. Hunt, Lubbock, Tex., for defendant-third party defendant, appellee.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, Circuit Judge:

The question before us in this diversity case is whether due process will permit the application of the Texas "Long-Arm" Statute to impose personal jurisdiction over Tokai-Seiki, a Japanese corporation. We find personal jurisdiction, and reverse. However, before addressing the merits, we must explain why this appeal is properly before us.

I. Appealability.

None of the parties to this appeal have raised the issue of appealability. Their failure to do so does not preclude this Court from addressing the question; it is well-established that a court may at any time, and *sua sponte*, determine whether it has jurisdiction. See *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248 n.3 (5th Cir. 1976); 5 Wright, Miller & Cooper, *Federal Practice & Procedure, Civil*, § 1350. Because the facts relevant to appealability in this case are somewhat convoluted, they require careful recounting.

On March 12, 1974, Mrs. Gene Oswalt was seriously burned when a "Catch 98" lighter, distributed by Scripto, allegedly malfunctioned, catching Mrs. Oswalt's pajamas on fire. Seeking to recover damages, Mrs. Oswalt and her husband sued Scripto and Tokai-Seiki, which the Oswalts alleged was the manufacturer of the lighter. Scripto subsequently filed a cross-claim against To-

kai-Seiki, and filed a third-party complaint for contribution and indemnity against Holland-Hessol Co., Inc., the manufacturer of the pajamas. Holland-Hessol in turn filed its own third-party complaint against Ameretex, the manufacturer of the fabric from which Mrs. Oswalt's pajamas were made.

On February 28, 1977, after a hearing on the issue of personal jurisdiction, the district court entered an order dismissing Tokai-Seiki. In response to this dismissal, the Oswalts and Scripto filed a Joint Motion for Permission to Appeal. One of the representations made to the district court in this Joint Motion was that the Oswalts had:

> received $125,000 from Scripto, Inc. in exchange for [the Oswalts'] agreement that they will not further prosecute their action against Scripto, Inc. and will allow Scripto, Inc. to receive the first $125,000 plus expenses and attorneys' fees up to $10,000, out of any recovery by [the Oswalts] against Tokai-Seiki KK. By such indemnity agreement, the only real defendant in [the Oswalts'] cause of action is Tokai-Seiki KK.
>
> The effect of the Court's order granting Tokai-Seiki KK's motion to dismiss [the Oswalts'] suit against such corporation for lack of jurisdiction over the person is to dismiss [the Oswalts'] entire law suit.

This Joint Motion was signed by both the Oswalts' and Scripto's attorneys. The district court granted the Oswalts' and Scripto's motion, and made the representations under 28 U.S.C.A. § 1292(b)[1] necessary to permit an appeal of an interlocutory order. On May 2, 1977, this court, exercising its discretion under 28 U.S.C.A. § 1292(b), denied the Oswalts and Scripto leave to appeal without giving reasons for the denial.

Undeterred by this court's refusal to hear their appeal, the Oswalts and Scripto then filed with the district court a Joint Motion to Sever the actions by Scripto against Holland-Hessol Company and the action by Holland-Hessol Company against Ameretex. In this Joint Motion, they repeated the representations concerning their settlement and the Oswalts' agreement not to prosecute their claim against Scripto. The district court granted this Joint Motion, and in addition entered a new Order, repeating in substance the order of February 25, 1977, as well as a Judgment, dismissing Tokai-Seiki for lack of personal jurisdiction. Because the Oswalts and Scripto this time did not request any 28 U.S.C.A. § 1292(b) representations, none were given. Nor did the district court give a Rule 54(b) certificate as is permitted by the Federal Rules of Civil Procedure.[2] The Oswalts and Scripto thereupon brought the appeal now before us.

After these procedural maneuvers by the Oswalts and Scripto, the current status of the case is as follows: (1) the Oswalts, Scripto and Tokai-Seiki are the only parties

---

1. 28 U.S.C.A. § 1292(b) reads:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

2. Fed.R.Civ.P. 54(b) reads:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

to the suit, as the actions against Holland-Hessol and Ameretex have been severed; (2) the judgment dismissing Tokai-Seiki does not have a Rule 54(b) certificate nor are there current § 1292(b) representations by the district court; and (3) while the Oswalts and Scripto have made representations in their Joint Motion for Permission to Appeal and in their Joint Motion to Sever that they have settled the claim by the Oswalts against Scripto, there remains no final order or judgment by the district court dismissing the claim by the Oswalts against Scripto.

■ It is the fact that there is no final order or judgment dismissing the claim by the Oswalts against Scripto which raises the question of whether the judgment below is final. See 28 U.S.C.A. § 1291.[3] Normally, in a multi-party law suit such as this one, an order is final under § 1291 only if it meets one or the other of two conditions: (1) it must adjudicate the claims or the rights and liabilities of all the parties, or (2) it must contain the certificate required by Rule 54(b), Fed.R.Civ.P. *Huckeby v. Frozen Food Express*, 555 F.2d 542, 545 (5th Cir. 1977); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1231 (5th Cir. 1973). But there is some flexibility in this rule in order that justice, and the economic termination of litigation may not suffer from an overly strict adherence to formalism. It must be remembered that practical, not technical, considerations are to govern the application of principles of finality. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *Jetco, supra.*

■ We begin our analysis by noting that the representation to the district court of a settlement between the Oswalts and Scripto, and their agreement that the Oswalts would not further prosecute their claim against Scripto, is tantamount to a stipulation of dismissal under Fed.R.Civ.P. 41(a)(1)(ii).[4] The representation concerning the settlement was signed by the attorneys for both the Oswalts and Scripto. It sets forth the basic terms of the agreement between the Oswalts and Scripto. It states unequivocally that in exchange for $125,000, the Oswalts have agreed that they would not further prosecute their action against Scripto. The representation further states unequivocally that as a result of this settlement the only real defendant in the Oswalts' cause of action is Tokai-Seiki and that the effect of the order dismissing Tokai-Seiki is to dismiss the Oswalts' entire law suit. The clear import of these statements was to indicate to the district court that the claim of the Oswalts against Scripto was no longer before it.

We are not deterred in reaching this decision by the fact that Rule 41(a)(1) refers to dismissals of an "action" by notice or stipulation. While the Second Circuit in *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir. 1953), *cert. denied* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953), has held that "action" in Rule 41 means the entire controversy, that view was rejected by this Court in *Plains Growers, Inc., Fl. M. I. Co. v. Ickes-Braun Glass,*

---

**3.** 28 U.S.C.A. § 1291 reads:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

**4.** Fed.R.Civ.P. 41(a)(1) reads:

(a) Voluntary Dismissal: Effect Thereof.

(1) *By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

*Inc.,* 474 F.2d 250 (5th Cir. 1973).[5] Several courts have not objected to stipulations dismissing individual parties or claims to a law suit without dismissing the entire controversy. See *Pipeliners Local Union No. 798, Tulsa, Oklahoma v. Ellerd,* 503 F.2d 1193 (10th Cir. 1974); *Rudloff v. Johnson,* 267 F.2d 708 (8th Cir. 1959); *Battle v. Municipal Housing Authority for City of Yonkers,* 53 F.R.D. 423 (S.D.N.Y.1971).

Nor are we deterred from finding a stipulated dismissal by the fact that there is no formal stipulation of dismissal entered in the record by the Oswalts or Scripto. This court approved a district court's finding that an oral dismissal of claims against defendants in the course of a trial was sufficient to constitute a dismissal under Rule 41(a)(1) even though there was no formal dismissal or stipulation filed with the clerk. *Harkless v. Sweeny Independent School District of Sweeny, Texas,* 554 F.2d 1353, 1360 (5th Cir. 1977), *aff'g. in part,* 388 F.Supp. 738, 749 (S.D.Tex.1975). The Tenth

Circuit in *Pipeliners Local* has found that a verbal stipulation of dismissal in open court sufficed for the purposes of Rule 41(a)(1)(ii). Compare, *Municipal Housing Authority for the City of Yonkers, supra.* To require the filing of a formal document would be to countenance a mechanistic view of the Federal Rules of Civil Procedure and exalt form over substance.

Having found that the Oswalts' claim against Scripto was dismissed by stipulation, we conclude the dismissal of Tokai-Seiki results in the termination of the litigation in the district court. Compare *Jetco, supra.* Accordingly, the order dismissing Tokai-Seiki is appealable. We now turn to the merits of this appeal.

II. Personal jurisdiction over Tokai-Seiki.

Personal jurisdiction over Tokai-Seiki is urged pursuant to Texas' "Long-Arm" Statute, Article 2031b, Vernon's Tex. Rev.Civ.Stat.Ann.[6] Normally, there is a

---

**5.** We do not read *Exxon Corporation v. Maryland Casualty Company,* 599 F.2d 659 (5th Cir. 1979) as being in conflict with this Circuit's decision in *Plains Growers* that "action" as used in Rule 41(a) does not mean the entire controversy of a law suit. While *Exxon Corporation* quotes language suggesting that "action" does mean the entire controversy, the holding was that plaintiff's attempted voluntary dismissal of a second claim against a defendant was ineffective since the defendant had previously sought summary judgment on the first claim. The primary concern of the panel in *Exxon Corporation* was the fact that if the plaintiff could dismiss the second action, there was the danger that the defendant would be forced to defend two suits in two different forums. There is no such danger in the case *sub judice.*

**6.** Article 2031b reads:

Section 1. When any foreign corporation, association, joint stock company, partnership, or non-resident natural person required by any Statute of this State to designate or maintain a resident agent, or any such corporation, association, joint stock company, partnership, or non-resident natural person subject to Section 3 of this Act, has not appointed or maintained a designated agent, upon whom service of process can be made, or has one or more resident agents and two (2) unsuccessful attempts have been made on different business days to serve process upon each of its designated agents, such corporation, association, joint stock com-

pany, partnership, or non-resident natural person shall be conclusively presumed to have designated the Secretary of State of Texas as their true and lawful attorney upon whom service of process or complaint may be made. Section 2. When any foreign corporation, association, joint stock company, partnership or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party arising out of such business, service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendant's principal place of business by registered mail, return receipt requested. Section 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in

two-step procedure in determining whether a state jurisdictional statute confers jurisdiction over a non-resident defendant in a federal diversity suit. First, it must be determined that the defendant is in fact amenable to service under the state statute; state law of the forum controls this question. *Jetco, supra; Barrett v. Browning Arms Co.*, 433 F.2d 141 (5th Cir. 1970). Second, if the state statute has been complied with, then it must be determined whether assertion of jurisdiction over the defendant comports with federal due process requirements. *Jetco, supra; Barrett, supra.* Tokai-Seiki below argued that the first step of this test was not met because the Oswalts and Scripto had failed to make all necessary allegations to permit process to be served under Art. 2031b. Tokai-Seiki also argued that the second step was not satisfied because of lack of necessary minimum contacts to comply with due process. In its Order dismissing Tokai-Seiki, the district court expressly did not reach the question of sufficiency of process and ruled only on the constitutional issue. As this is the only question raised on appeal, we turn immediately to the due process question.[7]

■ The facts contained in the record pertinent to this issue are few and can be quickly stated. Tokai-Seiki manufactured the "Catch 98" cigarette lighter which allegedly malfunctioned and injured Mrs. Oswalt. Tokai-Seiki is a foreign corporation, incorporated under the laws of the Country of Japan. It has its principal place of business in Yokahama, Japan. There is no evidence in the record that Tokai-Seiki has now, or ever has had, any office, place of business, servant, employee or director in either the United States or Texas. There is

such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

Section 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Section 5. Whenever process against a foreign corporation, joint stock company, association, partnership, or non-resident natural person is made by delivering to the Secretary of State duplicate copies of such process, the Secretary of State shall require a statement of the name and address of the home or home office of the non-resident. Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested.

Section 6. When any corporation, association, joint stock company, partnership or natural person becomes a non-resident of Texas, as that term is commonly used, after a cause of action shall arise in this State, but prior to the time the cause of action is matured by suit in a court of competent jurisdiction in this State, when such corporation, association, joint stock company, partnership or natural person is not required to appoint a service agent in this State, such corporation, association, joint stock company, partnership or natural person may be served with citation by serving a copy of the process upon the Secretary of State of Texas, who shall be conclusively presumed to be the true and lawful attorney to receive service of process; provided that the Secretary of State shall forward a copy of such service to the person in charge of such business or an officer of such company, or to such natural person by certified or registered mail, return receipt requested.

Section 7. Nothing herein contained shall be construed as repealing any statute in force in this State in reference to service of process, but this Act shall be cumulative of all existing statutes. Acts 1959, 56th Leg., p. 85, ch. 43.

7. We do not approve of the district court's action in deciding this case on constitutional grounds without first addressing the state law issue of sufficiency of process. *Ashwander v. T. V. A.*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (concurring opinion) and *Hagans v. Lavine*, 415 U.S. 528, 546–547, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974). We note, though, that the doctrine that constitutional issues should be avoided where possible is not ironclad. *Hagans*, at 546 and 547, n.12, 94 S.Ct. at 1384, n.12; *Sterling v. Constantin*, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932); 13 Wright, Miller, Cooper, *Fed. Practice & Procedure: Civil*, § 3567. On remand the district court will have to consider Tokai-Seiki's objection to the sufficiency of process.

no evidence in the record that Tokai-Seiki has ever done business in the United States or Texas, or has ever done business with American companies, other than with Scripto pursuant to the plan of distribution of cigarette lighters, one of which gives rise to the instant suit. The product on which this suit is based was manufactured, assembled, sold and delivered to Scripto in Japan.[8]

Kevin MacCarthy, Vice-President, Marketing of Scripto, stated in an affidavit that Scripto's records reflected that Scripto had an agreement with Tokai-Seiki whereby Scripto was the exclusive distributor of the Catch 98 lighter in the United States of America. He further swore that prior to Mrs. Oswalt's injury, Scripto had purchased several million of the lighters and had placed them in commerce for sale to the public in the United States of America. He stated that these lighters were marketed in "many of the states of the United States."[9]

MacCarthy's affidavit is supplemented in the record by an affidavit by H. W. Sams, who stated that while he was President and Chief Executive Officer of Scripto, Inc., in January, 1973, he conducted negotiations with Tokai-Seiki concerning Scripto's purchase of the Catch 98 lighter.[10] During a discussion of the potential market in the United States for the Catch 98 lighters, Tokai-Seiki was informed of the needs of one particular Scripto customer and was informed that the customer had "national retail outlets." Scripto did sell the Catch 98 lighters to that customer.

The record indicates that in 1973, Tokai-Seiki manufactured 3,165,000 Catch 98 lighters, and in 1974 manufactured 4,667,-

8. We note that jurisdiction does not depend on the technicalities of when *title* passes. A manufacturer can be subjected to in personam jurisdiction as a result of a distribution system employing independent wholesalers as well as one employing its own corporate apparatus. See *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591, 595–6 (5th Cir. 1969).

9. The body of MacCarthy's affidavit reads as follows:

My name is R. Kevin MacCarthy. My address is 760 Piedmont Way, N.E., Atlanta, Georgia. I am employed by Scripto, Inc., as Vice President, Marketing. In this capacity, I have access to records of Scripto, Inc., concerning the Catch 98 disposable butane lighter that they have marketed.

A review of our records reflects that all of the Catch 98 disposable butane lighters were marketed in the United States by Scripto, Inc., were purchased from Tokai-Seiki, KK. Our records further reflect that according to our agreement with Tokai-Seiki, KK, Scripto, Inc., prior to March 12, 1974, was the exclusive distributor of Catch 98 disposable butane lighters in the United States of America, and prior to that date, Scripto, Inc., purchased several million of such Catch 98 disposable butane lighters and placed them in commerce for sale to the public in the United States of America. These Catch 98 disposable butane lighters were marketed in many of the states of the United States.

FURTHER AFFIANT SAITH NOT.

10. The body of Sams' affidavit reads as follows:

Before me the undersigned a notary public in and for said county and state on this day personally appeared H. W. Sams to me well known and who after being before me duly sworn, *deposes and says:*

My name is H. W. Sams. I reside at 955 West Wesley Road, Atlanta, Georgia. I am presently Chairman of the Board of Scripto, Inc. I have been employed by Scripto, Inc. for approximately 34 years.

During the years 1973 and 1974 prior to March 12 of that year, I was employed by Scripto, Inc. in the capacity of President and Chief Executive Officer. In such capacity I represented Scripto, Inc. in January, 1973, in assessing the manufacturing capabilities of Tokai-Seiki KK to supply an adequate volume of Catch 98 disposable butane lighters to Scripto, Inc. to meet its distribution needs. Said lighters were manufactured by Tokai-Seiki KK. In such capacity, I met in January, 1973, with the representatives of Tokai-Seiki KK in the Tokai-Seiki KK office situated in Japan.

At such meeting the potential market in the United States for such lighters was discussed. In particular, we discussed the needs of one particular Scripto customer for such lighters and Tokai-Seiki KK was informed that said customer had national retail outlets.

Tokai-Seiki KK expressed an intent to manufacture the Catch 98 disposable butane lighters in sufficient quantity to satisfy the orders submitted by Scripto on schedule.

Scripto, Inc. did sell such Catch 98 disposable butane lighters to the particular customer referred to in my meeting with Tokai-Seiki KK representatives in Japan. Tokai-Seiki KK supplied said butane lighters in keeping with the discussions in sufficient quantities to supply Scripto, Inc.

FURTHER AFFIANT SAYETH NOT.

000, all of which were sold and delivered to Scripto. The record does not reveal how many of the lighters have ever been in Texas. Mr. Oswalt, who owns a drug store, purchased 12 or 14 of the lighters on a display card from Southwestern Drug Corporation, a wholesale supplier in Midland, Texas. Mrs. Oswalt got the lighter which injured her from this display card.

The district court in its order found that Tokai-Seiki "should have known or could expect the product would reach the forum." The district court nevertheless held that due process precluded jurisdiction on two grounds: (1) that no showing had been made that Tokai-Seiki had actual knowledge the lighter would be marketed in Texas as had been done in *Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315 (5th Cir. 1970); and (2) that no showing was made of other contacts by Tokai-Seiki with the forum as were present in *Jetco, supra,* and *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969).

█ We agree with the district court that Tokai-Seiki did have reason to know or expect that the cigarette. lighter would reach Texas. Three to four million such lighters were sold each year by Tokai-Seiki to Scripto pursuant to a distribution system which made Scripto the exclusive distributor in the United States and which included a customer with "national retail outlets." [11] Unlike the district court, we believe that this finding, in light of the circumstances of this case, is sufficient to subject Tokai-Seiki to in personam jurisdiction. The basis for our disagreement with the district court is the recent Supreme Court case, *World-Wide Volkswagen v. Woodson,* —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and a different reading of *Coulter, Eyerly* and *Jetco.*

### A. Supreme Court Guidelines

The guiding principle of due process in the exercise of personal jurisdiction was announced by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which allows states to exercise jurisdiction over non-residents who have such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), amplified this standard. *Hanson* states that due process requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

The trend of recent years has unquestionably been to expand the powers of the states to impose jurisdiction over defendants. As noted by the Supreme Court:

In part, this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time, modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*McGee v. International Life Insurance Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Despite this trend,

---

11. Tokai-Seiki relies on MacCarthy's affidavit to argue that the fact that the lighters were sold in "many states" indicates Tokai-Seiki knew its lighters would not be sold in other states. We believe Tokai-Seiki misreads MacCarthy's affidavit. The affidavit does not indicate that Tokai-Seiki believed its lighters were not being sold in some states; the affidavit merely states as a fact that the lighters were

sold in many states. Even if Tokai-Seiki's inference were reasonable, and Tokai-Seiki therefore would be deemed to believe its lighters would not be marketed in some states, Texas obviously was not one of the excluded states. We know that the Texas wholesaler sold the lighters to a Texas drug store and that Mrs. Oswalt thus acquired one.

though, the courts must be careful not to render decisions resulting in the "eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson*, 357 U.S. at 251, 78 S.Ct. at 1238.

The warning that a state's power to impose jurisdiction is not without limits was relied upon in *World-Wide Volkswagen, supra*, the most recent Supreme Court pronouncement on this issue. In *World-Wide Volkswagen*, New York residents who had a year earlier purchased an automobile from a Massena, New York, retailer were injured in Oklahoma while driving to a new home. The Court held that due process would not permit Oklahoma to impose jurisdiction over the local retailer of the automobile or the New York automobile wholesale distributor who sold to retailers in New York, Connecticut and New Jersey. The Court rejected the argument that jurisdiction was afforded because the mobility of automobiles made it "foreseeable" that a purchaser in Massena, New York, might drive the automobile through Oklahoma. In rejecting that notion of "forseeability," the Court pointed to the "forseeability that is critical to due process analysis":

> Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . .
> The Due Process Clause, by ensuring the 'orderly administration of the laws,' *International Shoe Co. v. Washington*, 326 U.S., [310] at 319, 66 S.Ct. [154] at 159 gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
> When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' . . . it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manu-

facturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

—— U.S. at ——, 100 S.Ct. at 567. In *World-Wide Volkswagen*, the plaintiffs had also sued the German manufacturer, Audi, and the American importer, Volkswagen. Neither defendant contested jurisdiction and, accordingly, the portion of the above quotation imposing jurisdiction upon them is dictum.

We believe that the imposition of personal jurisdiction over Tokai-Seiki comports with both the holding and dictum in *World-Wide Volkswagen*. The Supreme Court there noted that the only contact demonstrated in the record between both the local retailer and the New York wholesaler and Oklahoma was the single automobile involved in the suit. There was nothing in the record indicating that these defendants had in any way attempted to do business in Oklahoma; rather the Massena, New York, retailer sold only in Massena, and the wholesaler's sales were limited to New York, New Jersey and Connecticut. The facts in this case speak more strongly for the reasonableness and fairness of imposing personal jurisdiction over Tokai-Seiki. Tokai-Seiki delivered millions of the lighters to Scripto with the understanding that Scripto would be the exclusive distributor for the United States and that Scripto would be selling the lighters to a customer with national retail outlets. There is nothing in this record to indicate that Tokai-Seiki attempted in any way to limit the

states in which the lighters could be sold. To the contrary, the record shows that To-kai-Seiki had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states. Moreover, the record shows that Texas was one of the states in which the lighters were in fact marketed, the distribution chain including a Texas wholesaler and a Texas retail store. Given this distributorship arrangement, To-kai-Seiki's conduct and connection with Texas are such that it should reasonably anticipate being haled into court in Texas. Unlike the New York retailer and wholesaler in *World-Wide Volkswagen*, whose commercial ties were limited to New York, New Jersey and Connecticut, Tokai-Seiki's distribution system was not structured to gain some "minimum assurance", —— U.S. at ——, 100 S.Ct. at 567, that the lighters would not be sold in Texas.

Also, these facts place this case squarely within the dictum of *World-Wide Volkswagen* implying that jurisdiction over a foreign manufacturer such as Audi is constitutional. By utilizing the distribution network in the United States established by Scripto, Tokai-Seiki has made efforts to serve indirectly the market for its product in Texas. Tokai-Seiki, precisely as the dictum describes, "delivered its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum state". The instant case fits like a glove the commercial context and the manufacturer's distribution plan for the marketing of its product contemplated by the *World-Wide Volkswagen* dictum.

We conclude that the guiding principles provided by the Supreme Court support jurisdiction over Tokai-Seiki. We turn now to the Fifth Circuit cases.

### B. Fifth Circuit Cases

Our analysis begins with *Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315 (5th Cir. 1970). In *Coulter*, this Court was called upon to decide whether due process prevented Texas from exercising jurisdiction over Warwick, a non-resident manufacturer

of an allegedly defective television set distributed by Sears. The only evidence of contacts by Warwick with Texas was an affidavit by an official of Sears. This affidavit stated that "a great many of the color and black and white television sets manufactured by Warwick are and have been sold and offered by Sears in Texas, all with Warwick's knowledge." 426 F.2d at 1316. While this Court in *Coulter* noted that Warwick unquestionably knew that its products were being regularly marketed in Texas, it did not establish such actual knowledge as the touchstone of jurisdiction. Instead, this Court stated that it is sufficient to impose jurisdiction over a foreign manufacturer if he introduces his product into the "stream of interstate commerce with reason to know or expect that his product would eventually be brought into Texas", the forum state, 426 F.2d at 1318. We note that this test is almost identical to that in the *World-Wide Volkswagen* dictum.

In this case, the court below saw a significant distinction between the jurisdictional showing here and that in *Coulter*; here it has been shown that Tokai-Seiki introduced its products into the stream of commerce and *should have known* they would be marketed ultimately in Texas; in *Coulter*, it was shown that the manufacturer *actually knew* its products were marketed in Texas. We cannot assign such significance to this distinction. The traditional equivalence between "know" and "should have known" in our jurisprudence suggests that, for purposes relevant to this case, it is a distinction that makes no difference.[12] The ultimate test of in personam jurisdiction is "reasonableness" and "fairness" and "traditional notions of fair play and substantial justice," *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158. In applying such a test, it is a matter of common sense that there should be no distinction between "know" and "should have known." We cannot say that a potential defendant who *actually knows* his products will ultimately reach the forum state any more "purposefully avails itself of the privilege of conducting activities

---

12. The philosopher, William James, would have said it is a difference that makes no difference.

[there]", *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240, than a potential defendant who merely *should have known*.[13] Accordingly, we conclude that *Coulter* is controlling, and that the court has in personam jurisdiction over Tokai-Seiki.

Tokai-Seiki, citing *Coulter, Eyerly* and *Jetco, supra,* makes an additional argument that two conditions must be met before jurisdiction can be imposed when a manufacturer does not have actual knowledge his product is entering a particular forum state: (1) there must be a reasonable expectation that the product will enter the forum state, and (2) there must be sufficient other contacts by the manufacturer with the forum state. Tokai-Seiki argues that this two prong test is established in the following language of *Jetco*:

> When a nonresident defendant introduces a product into interstate commerce under circumstances that make it reasonable to expect that the product may enter the forum state, the forum may assert jurisdiction over the defendant in a suit arising out of injury caused by the product in the forum, if the defendant's other activities within the forum, even though wholly unrelated to the suit, satisfy the minimum contacts requirement.

473 F.2d at 1234. The district court relied on the same reasoning in its decision.

We acknowledge that the quoted language suggests that both conditions are necessary, but we note that the language is dictum. In *Jetco*, the defendant did have other contacts with the forum state on which the court could, and did, rely. Therefore, the court was not required to hold that

other contacts are necessary when there is only a reasonable expectation. The fact that the *Jetco* language quoted above cites *Eyerly* and *Coulter* for authority further undermines Tokai-Seiki's argument.

In *Eyerly*, an Oregon manufacturer of carnival equipment sold a ride to a Chicago, Illinois, operator some 20 years before the injury giving rise to the suit. The Illinois operator sold the ride to a North Dakota operator who toured various states. While on tour in Texas, the plaintiff was injured in a fall from the ride. The manufacturer had substantial other contacts with Texas, having sold and serviced equipment there. In finding jurisdiction, Judge Goldberg relied on the dual grounds of reasonable expectation and other contacts, because both were present, but he was careful to reserve the question of whether the commission of a single tort would be sufficient without other contacts. 414 F.2d at 597–8. Thus, *Eyerly* does not lend authority to Tokai-Seiki's literal interpretation of the *Jetco* language.

Nor does *Coulter* support the interpretation. Although there was actual knowledge that the product was entering the forum state in *Coulter*, the Court noted the same two prong test, *i. e.*, reasonable expectation and other contacts, and clearly stated that the first prong alone is sufficient. 426 F.2d at 1318.[14]

Our conclusion is reinforced by the holding in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).[15] *Gray* was cited favor-

---

**13.** We note that in *World-Wide Volkswagen* the dictum stated the test as whether the defendant places the product in the stream of commerce with the "expectation" they will be purchased in the forum state.

**14.** Moreover, it should be noted that the products in *Eyerly* and *Jetco* did not reach the forum state through a marketing distribution chain, as was present in *Coulter* and the *World-Wide Volkswagen* dictum, and in the instant case. While we do point out that establishment of a distribution system does involve the kind of purposeful availing of the privilege of conducting activities that is critical to jurisdiction, we are careful to express no opinion as to

whether the activities in *Eyerly* or *Jetco* would have constituted a similar purposeful activity, without the other contacts that were relied on in both cases.

**15.** We are further bolstered in our conclusion by the fact that in three products liability cases, district courts have found jurisdiction over non-American manufacturers even though their contacts with the forum state were apparently as few or fewer than the contacts in the instant case. In *Scanlan v. Norma Projektil Fabrile*, 345 F.Supp. 292 (Mon.1972), a Swedish manufacturer of ammunition sold its ammunition to its American distributor for sale "any place in the United States where a market for it can be

ably by the Supreme Court in *World-Wide Volkswagen*, and by this Circuit in *Eyerly* and in *Coulter*. In *Gray*, the plaintiff was injured in Illinois when a water heater exploded because of a defective valve. The defendant corporation manufactured the defective valve in Ohio and, subsequently, the valve was incorporated into a hot water heater in Pennsylvania. The hot water heater was sold in the course of commerce and eventually reached Illinois. The Illinois Supreme Court in finding jurisdiction noted:

> In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of [the manufacturer's] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State and . . from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

176 N.E.2d at 766. Tokai-Seiki's contacts with Texas are more substantial and direct than those in *Gray*.

We hold that the facts established in this case are sufficient to impose in personam jurisdiction on Tokai-Seiki. Tokai-Seiki

sold three to four million cigarette lighters per year to Scripto as part of a distribution system for its product which included Scripto as the exclusive distributor in the United States and a customer of Scripto with national retail outlets. Tokai-Seiki should have known that its products would reach Texas in the normal course of the distribution chain. The lighter was in fact acquired by Mrs. Oswalt from a Texas drug store which acquired it from a Texas wholesaler. This case involves the commercial context and the precise marketing distribution system contemplated by the dictum in *World-Wide Volkswagen* and the holding in *Coulter*.

REVERSED AND REMANDED.

found." In *Blum v. Kawaguchi, Ltd.*, 331 F.Supp. 216 (Neb.1971), the Japanese manufacturer of a plastic molding machine had sold and shipped the machine to a company in Los Angeles, which in turn sold and shipped the machine to a Nebraska company, which in turn sold it to another company in Nebraska where the injury occurred. In *Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D.Pa.1971), a Swedish manufacturer sold and delivered in Sweden a

crane for sale and distribution in the United States.

Comparison should also be made to *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir. 1969), *Saccamain v. Robert Reiser & Company, Inc.*, 348 F.Supp. 514 (W.D.Pa. 1974), and *Thornton v. Toyota Motor Sales U. S. A., Inc.*, 397 F.Supp. 476 (N.D.Ga.1975).