**VIDEOJET SYSTEMS INTERNATIONAL, INC., a Delaware corporation, Plaintiff,**

v.

**EAGLE INKS, INC., a Florida corporations, and Frank M. Quaglia, Jr., an individual domiciled in Florida, Defendants.**

No. 97 C 4504.

United States District Court,
N.D. Illinois,
Eastern Division.

July 27, 1998.

Clarence J. Fleming, Thomas F. Gardner, James A. White, Lester Julian Savit, Robert John Zeitler, Jones, Day, Reavis & Pogue, Chicago, IL, for Plaintiff.

Richard A. Del Giudice, Earl Edward Farkas, Gozdecki & Del Giudice, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Videojet Systems International Inc. ("Videojet"), sued the defendants, Eagle Inks, Inc. and Frank M. Quaglia, Jr. ("Eagle Inks"), for patent infringement. Eagle Inks counterclaimed, requesting a declaratory judgment and alleging violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Illinois Uniform Deceptive Trade Practices Act ("Trade Practices Act"), 815 ILCS 510/1 *et seq.*, and the Illinois Trade Secrets Act ("Trade Secrets Act"), 765 ILCS 1065 *et seq.* Videojet moves to dismiss certain of Eagle Inks' counterclaims and affirmative defenses. For the following reasons, the motion is granted in part and denied in part.

### Background

Eagle Inks manufactures and sells inks, make-up solutions and cleaning solutions for ink jet printers. (Third Amend. Counter. ¶ 3). Frank M. Quaglia, Jr. is the founder and president of Eagle Inks. (Third Amend. Counter. ¶ 4). Videojet manufactures ink jet printers, ink jet printer parts, and inks, make-up solutions and cleaning solutions for use in ink jet printers. (Third Amend. Counter. ¶ 5). Videojet has two patents for ink jet compositions: United States Letters Patent No. 4,567,213 ("213 Patent") and United States Letters Patent No. 4,756,758 ("758 Patent"). (Amend. Complaint ¶¶ 8–9).

Videojet claims Eagle Inks infringed its patents by selling ink that is the equivalent of its patented ink.

### Counterclaims

Videojet moves to dismiss Eagle Inks' Sherman Act counterclaim, Trade Practices Act counterclaim, and Trade Secrets Act counterclaim. According to Videojet, on March 11, 1998, moments before a hearing on a motion to compel, Eagle Inks filed discovery responses that refused to provide information or documents relating to its Sherman Act, Trade Practices Act, and Trade Secrets Act counterclaims. Eagle Inks stated in its discovery responses that it would voluntarily dismiss those counterclaims. (Pl.Ex. C). In response, Videojet informed the court that the motion to compel had been narrowed because Eagle Inks was going to dismiss three of its counterclaims. (Pl.Ex. I). Eagle Inks did not dispute this contention. In reliance on Eagle Inks' representations, Videojet did not file a response to the three counterclaims when it answered Eagle Inks' Third Amended Counterclaim. Eagle Inks has yet to file a motion to dismiss the three counterclaims. Videojet argues Eagle Inks' counterclaims should be dismissed based on Eagle Inks' representations.

Eagle Inks voluntarily withdraws its Sherman Act and Trade Practices Act counterclaims. Accordingly, those claims are dismissed without prejudice. Eagle Inks states that it has decided not to dismiss its Trade Secrets Acts counterclaim because it is afraid the statute of limitations will run on that claim.

Videojet argues that under Federal Rule of Civil Procedure 41(a)(1) Eagle Inks has voluntarily dismissed the Trade Secrets Act counterclaim and must now move for leave to reinstate the counterclaim. Rule 41(a)(1) permits a plaintiff to voluntarily dismiss a counterclaim by "filing a notice of dismissal at any time before service by the adverse party of an answer. . . ." Videojet argues that

Eagle Inks' representations constitute a "notice of dismissal" filed before it answered the counterclaim. Case law from other circuits indicates that oral representations made in open court can satisfy Rule 41(a)(1)'s "notice of dismissal" requirement. *Eitel v. McCool,* 782 F.2d 1470, 1472–73 (9th Cir.1986); *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 195 (5th Cir.1980).

Even if Eagle Inks' representations can be considered sufficient to constitute a voluntary dismissal under Rule 41(a)(1), it is clear that Eagle Inks wishes to reinstate its Trade Secrets Act counterclaim. Accordingly, I will treat Eagle Inks' response as a motion for reinstatement. The motion is granted and Eagle Inks should file an amended counterclaim with its reinstated Trade Secrets Act counterclaim.

### Affirmative Defenses

Eagle Inks has filed fifteen affirmative defenses in response to Videojet's 213 Patent infringement claim and sixteen affirmative defenses in response to Videojet's 758 Patent infringement claim. Videojet moves to strike eight affirmative defenses per claim.[1] Based on Eagle Inks' voluntary dismissal of its Sherman Act and Trade Practices Act counterclaims it agrees that its First and Third affirmative defenses to each patent claim are superfluous. Accordingly, those four affirmative defenses are stricken.[2] Eagle Inks also voluntarily withdraws its Fourth and Sixth affirmative defenses to each patent claim.

Videojet objects to Eagle Inks' laches and estoppel affirmative defenses. Eagle Inks concedes its laches and estoppel affirmative defenses are defective as plead and proposes new wording that it believes cures their defects. Accordingly, Eagle Inks' Twelfth and Fifteenth affirmative defenses to the 213 Patent claim and Eagle Inks' Eleventh and Fourteenth affirmative defenses to the 758 Patent claim are stricken. While

---

1. In relation to the 213 Patent Videojet moves to strike Eagle Inks' First, Second, Third, Fourth, Sixth, Tenth, Twelfth, and Fifteenth affirmative defenses. In relation to the 758 Patent Videojet moves to strike Eagle Inks' First, Second, Third, Fourth, Sixth, Tenth, Eleventh, and Fourteenth affirmative defenses.

2. Since Eagle Inks' Trade Secrets Act counterclaim remains in the case its affirmative defense relating to the counterclaim will not be stricken.

Eagle Inks' proposed revisions appear to cure the deficiency in its laches defense, the proposed revisions do not correct the fundamental flaws in its estoppel defense; that is, a failure to plead a materially adverse change. Eagle Inks must address this deficiency if it is to replead its estoppel defense.

■ Finally, Videojet moves to strike Eagle Inks' inequitable conduct affirmative defense and those portions of Eagle Inks' declaratory judgment counterclaims that allege inequitable conduct. "Inequitable conduct resides in failing to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988). Allegations of inequitable conduct must be plead with the particularity required by Federal Rule of Civil Procedure 9(b). *Sun–Flex Co. Inc. v. Softview Computer Products Corp.*, 750 F.Supp. 962, 963 (N.D.Ill.1990). Thus, Eagle Inks must plead the "who, what, when, and where" of the alleged inequitable conduct. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992).

■ Videojet argues that Eagle Inks has improperly plead inequitable conduct "upon information and belief" and has not included sufficient facts to comport with Rule 9(b). Allegations made "upon information and belief" are only insufficient if a party also fails to state the grounds for the suspicion of inequitable conduct. *Id.* at 924. Eagle Inks has plead the grounds for its suspicions and has included an appropriate intent allegation. Regarding the 213 Patent, Eagle Inks alleges Videojet inventors knew "the compositions set forth in the Examples and the descriptive portion of the [213 Patent] were non-functional for the intended purpose...." (Df. Tenth Aff. Defense 213 Patent). Eagle Inks alleges that, regardless of this knowledge, Videojet inventors represented to the United States Patent and Trademark Office that the compositions were functional with the intent that the Patent Office rely on the false representations in determining patentability. *Id.* I find this is sufficient particularity to meet the Rule 9(b) standard. Eagle Inks has specified the alleged fraudulent conduct, where it occurred, and when it occurred.

■ As for the 758 Patent, Eagle Inks alleges that Videojet inventors knew "that the compositions set forth in the [E]xamples and the descriptive portion of [the 758 Patent] were invented by and used prior to the critical date by Videojet's current supplier Easterday...." (Df. Tenth Aff. Defense 758 Patent). As above, Eagle Inks alleges that, regardless of this knowledge, Videojet inventors represented to the United States Patent and Trademark Office that the compositions were functional with the intent that the Patent Office rely on the false representations in determining patentability. *Id.* Again, these allegations meet the Rule 9(b) standard. They allege Videojet's knowing use of a specific company's prior invention with the intent to deceive the Patent Office.

### Conclusion

For the foregoing reasons, Eagle Inks' Second and Third counterclaims are withdrawn and its Fourth counterclaim is reinstated. Eagle Inks' First, Third, Fourth, Sixth, Twelfth, and Fifteenth affirmative defenses to Videojet's 213 Patent claim are either stricken or withdrawn. Eagle Inks' First, Third, Fourth, Sixth, Eleventh, and Fourteenth affirmative defenses to Videojet's 758 Patent claim are either stricken or withdrawn. Videojet's motion to strike Eagle Inks' Second and Tenth affirmative defenses to each patent claim and portions of Eagle Inks' First and Fifth counterclaims is denied.