[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10279

Non-Argument Calendar

_____

GOLD STAR WIVES OF AMERICA INC,

Plaintiff-Appellee,

*versus*

TAMRA SIPES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cv-01015-RDP

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Gold Star Wives of America, Inc., a nonprofit organization, sued Tamra Sipes, its former president, seeking damages and injunctive relief. A few months after the lawsuit was filed, the district court entered an order reflecting that the parties had settled the case and dismissing all claims with prejudice. The order stated that as part of the settlement Sipes had agreed to refrain from certain actions in the future and listed the restrictions to which she had agreed. On appeal, Sipes argues that the district court lacked subject matter jurisdiction to enter the dismissal order and that it included in the order restrictions to which she never agreed. After careful consideration, we affirm.

## I.

Gold Star Wives was formed after World War II to support the spouses of fallen United States soldiers. The organization's headquarters is in Birmingham, Alabama. It owns at least one registered trademark.

Sipes is a member of the Gold Star Wives organization. She joined after her husband died while serving in the United States military. She previously served as the organization's president.

In April 2023, Sipes was removed as president. According to the organization, after her removal Sipes continued to hold herself out as its president, use its registered trademark and other marks,

send communications from the email account for the organization's president, and administer its Facebook group.

In August 2023, the Gold Star Wives sued Sipes in federal district court in the Northern District of Alabama, bringing claims for trademark infringement and false designation of origin under the Lanham Act, cybersquatting, intentional interference with contractual or business relations, and unjust enrichment. It sought injunctive relief as well as damages.

Shortly after filing the complaint, Gold Star Wives moved for a preliminary injunction. Sipes filed a motion to dismiss, arguing that the district court lacked personal jurisdiction over her because she had no contacts with Alabama.

In September 2023, the district court held an in-chambers status conference. At the conference, Sipes was represented by two attorneys. Part of the status conference was transcribed. The transcript begins with the court stating that it had asked the lawyers to meet before the conference and encouraged them to settle the dispute. The court noted that the parties had reached a resolution, but it would take time to implement. The court indicated that as part of the resolution it would "place the case on its administrative docket." Doc. 32 at 2.[1]

The court then asked the parties to recite the terms of their agreement. Gold Star Wives's attorney stated that Sipes had agreed not to: "knowingly hold herself out, directly or indirectly, as an

---

[1] "Doc." numbers refer to the district court's docket entries.

officer or any official position" of the organization; "directly or indirectly, use [the organization's] registered trademark"; "knowingly act in concert with other persons using the trademark and name"; or "communicate with members" of the Gold Star Wives while using the organization's trademark and "suggesting she has some position" with the organization. *Id.* at 2–3.

After the organization's attorney listed these terms, the court remarked, "[t]hat's a lot of legal language." *Id.* at 3. The court then summarized "the gist" of the agreement: Sikes would not: "hold herself out as an officer" of the organization, use its "trademark or indicate that she has some imprimatur of position with" the organization, or "indirectly do any of these things on Facebook or otherwise." *Id.* The court explained, "basically, what she's alleged to have done in the complaint she agrees not to do . . . in the future." *Id.* In return, the organization agreed to "dismiss its claims . . . against [Sikes] with prejudice at the end of this process." *Id.*

The court acknowledged that there remained fundamental disagreements between the parties on "the future of the organization"; "the direction of the organization"; and "the policies, practices, [and] protocols of the organization." *Id.* at 4. Although these issues were not part of the case before the district court, the court explained that the parties had agreed to mediate to try to resolve them. The court stated that the parties had agreed to dismissal of the case at the conclusion of the mediation.

After reciting these terms, the court asked, "Did I accurately capture the deal we have?" *Id.* at 5. One of Sipes's attorneys initially

agreed. But the other attorney quickly interjected to ask the court to clarify that the agreement would not bar Sipes "from enjoying the privileges of general membership" in Gold Star Wives. *Id.* at 6. The court then stated that Sipes could remain a member but could not serve as an officer or "hold herself out as an officer or someone who has authority to speak on behalf of" the organization. *Id.* As a member, she would remain able to "advocate for different policies and practices for the organization," including on social media. *Id.* After the court provided this clarification, Sipes's attorney stated, "[W]e agree with that—with the modification." *Id.* The organization's attorney indicated that he, too, agreed with the court's summary. At the end of the status conference, the court again noted that regardless of the outcome of the mediation, the case would be dismissed. After the conference, the district court issued a short order "administratively clos[ing]" the case until the parties completed mediation of the remaining issues. Doc. 30.

The parties then participated in a mediation, which was unsuccessful. In December 2023, Gold Star Wives notified the court that the mediation was complete. It asked the court to "enter an order setting forth the principal points of agreement reached during the in-chambers conference." Doc. 34 at 1.

Sipes opposed this request. She argued that it was unnecessary for the order to list the terms of the parties' agreement because "the transcript of the . . . conference includes the agreement of both parties to the Court's wording of the principal points of agreement." Doc. 35 at 1. She admitted that the transcript accurately

memorialized the terms of the agreement. But she worried that the court's entry of an order listing the terms of the agreement would allow the organization "to seek enforcement of the settlement agreement in the [district court] in lieu of [filing] a subsequent breach of contract action," which would be "contrary to the shared understanding" reached at the conference. *Id.* at 1–2.

A few days later, the court entered an order dismissing the case with prejudice. It noted that the parties had reported reaching a settlement agreement at the status conference. The court stated that as part of the agreement Sipes agreed not to: "[k]nowingly hold herself out, directly or indirectly, as an officer holding any official position with" Gold Star Wives; "[d]irectly or indirectly use [the organization's] registered trademark"; "[k]nowingly act in concert with other persons using [the organization's] trademark and/or name"; "[c]ommunicate with [the organization's] members using [its] trademark thereby potentially causing confusion by suggesting [Sipes] maintains some official leadership position with" the organization; or "[u]se any email address containing [the organization's] name or trademark." Doc. 36 at 2. The order also reported that Gold Star Wives had agreed that Sipes would "continue to hold general membership status" in the organization. *Id.* The court directed that it "expressly does not maintain jurisdiction over this case or the parties' settlement." *Id.* (emphasis omitted).

After the court entered the dismissal order, Sipes filed a motion to vacate, arguing that the order did not "accurately or completely describe the terms" of the parties' agreement. Doc. 37 at 1.

She complained that under the terms of the settlement reported in the order, she would be required to do "something she would never agree to—the wholesale abandonment of her rights as a Gold Star Wife." *Id.* at 2. She asserted that the order would prohibit her from wearing "her [Gold Star Wives] hat and pins to honor her late husband" and bar her from "interact[ing] with another person who is wearing a [Gold Star Wives] hat or pin for the rest of her life." *Id.*

The court denied Sipes's motion. It explained that under the settlement she remained a member of the organization and retained the right to "advocat[e] for different organizational policies and practices." Doc. 40 at 3. The court also stated that she could wear her Gold Star Wives hat and pins. If issues arose in the future about whether there was a breach of the settlement agreement, "the party asserting the breach would be required to show that a material term of the parties' settlement was violated." *Id.* at 4. The court noted that its order simply included "a recitation of how the parties characterized the settlement to the court." *Id.*

This is Sipes's appeal.

## II.

Sipes raises two issues on appeal. First, she argues that the district court lacked subject matter jurisdiction to enter the dismissal order because the case was voluntarily dismissed at the status conference. Second, she argues that even if the district court had jurisdiction to enter the dismissal order, the order should be vacated because it included restrictions to which Sipes never agreed. We consider each issue in turn.

### A.

We begin with subject matter jurisdiction. Sipes argues that at the status conference in September 2023 the parties stipulated to the dismissal of the action and thus voluntarily dismissed the action under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). She says that the dismissal immediately divested the court of subject matter jurisdiction and thus it lacked authority to enter the dismissal order in December 2023.

Rule 41(a)(1)(A)(ii) permits a plaintiff to "dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). Such a stipulation "is self-executing and dismisses the case upon filing." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277 (11th Cir. 2012). It "divests the district court of jurisdiction." *Id.* at 1278.

The question here is whether a Rule 41(a)(1)(A)(ii) stipulation was submitted at the status conference. Sipes does not assert that a signed, written stipulation was filed. Instead, she says that the parties submitted an oral stipulation of dismissal under Rule 41(a)(1)(A)(ii) at the conference.

True, our predecessor court recognized that an unqualified oral statement stipulating to the dismissal of all claims could satisfy Rule 41(a)(1)(A)(ii). *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 195 (5th

Cir. 1980).[2] But we are not persuaded that an unqualified oral stipulation of dismissal was made here. No party said so at the status conference. And we see nothing in the conference transcript otherwise indicating that the parties intended to submit such a stipulation. Instead, the statements from the court and the parties in the transcript show that they understood the case would be administratively closed while the parties tried to mediate a global settlement to resolve all their disputes.

We reject Sipes's argument that a Rule 41(a)(1)(A)(ii) stipulation of dismissal was submitted at the status conference. Thus, the district court had subject matter jurisdiction over the case when it entered the dismissal order in December 2023.

## B.

We now turn to Sipes's second argument: that the district court erred in entering the dismissal order because its description of the terms of the parties' agreement included restrictions to which she had never agreed.

In December 2023, the district court dismissed the action pursuant to Federal Rule of Civil Procedure 41(a)(2), which permits a district court to dismiss an action "at the plaintiff's request . . . on terms that the court considers proper." We review for abuse of discretion a district court's order permitting a voluntary dismissal

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

under Rule 41(a)(2). *See McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir. 1986).

Sikes argues that the district court erred because there was "no evidence that [she] ever agreed to" the proposed terms recited by counsel for Gold Star Wives at the status conference and later memorialized in the dismissal order. Appellant's Br. 24. We disagree. The record reflects that Sikes agreed to these terms. After the organization's attorney listed the proposed terms, Sipes requested only one clarification: to confirm that she would retain her general membership. After the court confirmed that she would, Sipes's attorney indicated that Sipes agreed. Moreover, Sipes later admitted to the district court that the transcript of the status conference showed "the agreement of both parties" to the recited terms. Doc. 35 at 1. We thus reject Sipes's argument that the district court's order listed terms to which she never agreed.[3]

### III.

For the above reasons, we affirm the judgment of the district court.

**AFFIRMED.**

---

[3] In her appellate brief, Sipes argues that she never agreed to the district court's restrictions because they would bar her from wearing her Gold Star Wives hat and pins, and she would never agree to such limitations. But the agreement does not bar Sipes from wearing these items. As the district court reiterated in its order denying her motion to vacate, under the terms of the settlement Sipes continues to enjoy general membership status. Indeed, the court expressly stated that she would be permitted to wear these items.