ACCEPTED
13-16-00074-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/26/2016 4:34:31 PM
Dorian E. Ramirez
CLERK

No. 13-16-00074-CV

# IN THE THIRTEENTH COURT OF APPEALS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/26/2016 4:34:31 PM
DORIAN E. RAMIREZ
Clerk

# CORPUS CHRISTI, TEXAS

---

## MASTERCRAFT BOAT COMPANY, LLC,
**Appellant,**
v.
## REBECCA CHAMBERS
**Appellee.**

---

## Appealed from the County Court at Law No. 3
## Of Nueces County, Texas

---

## APPELLEE REBECCA CHAMBER'S RESPONSE BRIEF

-------------------------------------------------------------------------------------------------

**Douglas A. Allison**
**Texas Bar No. 01083500**
**doug@dallisonlaw.com**
**Law Office of Douglas A. Allison**
**403 N. Tancahua**
**Corpus Christi, Texas 78401**
**Telephone: 361-888-6002**
**Facsimile:   361-888-6651**
**ATTORNEY FOR APPELLEE**
**REBECCA CHAMBERS**

## APPELLEE REBECCA CHAMBERS REQUESTS ORAL ARGUMENT

i

**MasterCraft Boat Company, LLC**

**Appellant,**

**v.**

**Rebecca Chambers,**

**Appellee.**

_____

## <u>IDENTITY OF PARTIES & COUNSEL</u>
_____

Appellant MasterCraft Boat Company, LLC
Marc Evan Kutner, Esq.
Texas Bar No. 11770575
MKutner@leggefarrow.com
Michael J. Wray, Esq.
Texas Bar No. 24052191
MWray@leggefarrow.com
Legge, Farrow, Kimmitt, McGrath & Brown, LLP
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: 713-917-0888
Facsimile:  713-953-9470

Appellee Rebecca Chambers
Douglas A. Allison
Texas Bar No. 01083500
doug@dallisonlaw.com
Law Office of Douglas A. Allison
403 N. Tancahua
Corpus Christi, Texas 78401
Telephone: 361-888-6002
Facsimile:  361-888-6651

# TABLE OF CONTENTS

**IDENTITY OF PARTIES & COUNSEL** ...................................................................ii

**INDEX OF AUTHORITIES**.................................................................................iv

**STATEMENT OF THE CASE**............................................................................. v

**STATEMENT ON ORAL ARGUMENT** .............................................................. vi

**ISSUES PRESENTED FOR REVIEW**..................................................................vii

    Issue 1:    Whether MasterCraft Boat Company LLC (Appellant) did purposefully avail itself of the privilege of conducting activities within the State of Texas to such an extent so as to established minimum contacts sufficient to support the trial court's exercise of general jurisdiction over Appellant. ............................................vii

    Issue 2:    Whether MasterCraft Boat Company LLC's (Appellant's) alleged liability in this case arise out of or relates to Appellant's purposeful activity in the State of Texas so as to support the trial court's exercise of specific jurisdiction over Appellant. ........................................................................................vii

    Issue 3:    Whether the trial court's exercise of jurisdiction over Appellant comports with traditional notions of fair play and substantial justice. ............................................vii

    Issue 4:    Whether the trial court erred in failing to sustain Appellant's objections to certain deposition testimony, and whether such refusal, if any, to grant Appellant's objections was harmful error (if any). ............................................vii

**STATEMENT OF FACTS**.................................................................................. 1

**SUMMARY OF ARGUMENT** ........................................................................ 16

**ARGUMENT**................................................................................................ 18

    1.    Plaintiff's Pleadings Support this Court's Exercise of Jurisdiction -- ...................................18

    2.    Legal Authority in Support of a Court's Exercise of Jurisdiction -- ......................................19

    3.    This Court has Specific Jurisdiction over Appellant --...........................................................23

    4.    This Court has General Jurisdiction over Appellant --...........................................................24

**THIS COURT'S EXERCISE OF JURISDICTION DOES NOT OFFEND TRADITIONAL NOTIONS OF FAIR PLAY** ....................................................... 29

    1.    The burden upon Appellant --...............................................................................................30

    2.    The interest of Texas in Adjudicating this Dispute in Texas -- ...............................................31

    3.    Plaintiff's Interest in Obtaining Convenient / Effective Relef --..........................................31

    4.    Interstate Judicial System's Interest in Obtaining Efficient Resolution ...........................32

    5.    Shared Interests of States to Further Social Policies -- ........................................................32

**CONCLUSION** ........................................................................................... 33

**CERTIFICATE OF SERVICE** ........................................................................ 34

# INDEX OF AUTHORITIES

**Cases**

*American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), cert. denied, 537 U.S. 1191 (2003)........................................... 18, 19, 21, 24

*Asahi Metal industiral Company, Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113-115 (1987)....................................................... 29, 30

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)................ 20, 27, 29, 30

*Frank A. Smith Sales, Inc., d/b/a Frank Smith Toyota v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 746 (Tex. App. - - Corpus Christi 2000, no pet.)....................... 18, 19

*Guardian Royal Exch. Assurance, LTD. v. English China Clays, 815 S.W.2d 223 (1991)*, 815 S.W.2d at 231 ............................................................... 29

*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, (2 L.Ed.2d 1283 (1958)).... 21, 27

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940) ......................... 20

*Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985)................. 21

*M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 n.1 (Tex.App. - - Corpus Christi 1999, no pet) ................................................................ 18

*McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965) ......................................... 18

*Mi Gwang Contact Lens Co. v. Chapa*, No. 13-13-00306-CV, 2015 WL 3637846 (Tex.App.—Corpus Christi June 11, 2015)......................................................... vi

*Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980)............................................ 22

*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) .................................................................................................... 22

*Schlobohm v. Shapiro*, 784 S.W.2d 355, 357 (Tex. 1990). ............................. 20, 27

*World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980) ................................. 30

## STATEMENT OF THE CASE

Appellee sued Appellant for strict product liability arising from the design, manufacture, and marketing of a boat. Appellee was a passenger on the boat, she fell overboard, and the unguarded propeller traumatically amputated her leg. (CR 1:10) Appellant filed a special appearance to contest the Court's jurisdiction. (CR 1:43-45.) The Court denied Appellant's special appearance by Order dated January 28, 2016. (R 1:108.) This accelerated interlocutory appeal ensued.

## STATEMENT ON ORAL ARGUMENT

There is not a need for oral argument because the issues presented have been authoritatively decided. *See* Tex. R. App. P. 39.1 (b). The Thirteenth Court of Appeals has issued an opinion in *Mi Gwang Contact Lens Co. v. Chapa*, No. 13-13-00306-CV, 2015 WL 3637846 (Tex.App.—Corpus Christi June 11, 2015), that is on point.

# ISSUES PRESENTED FOR REVIEW

Issue 1:    Whether MasterCraft Boat Company LLC (Appellant) did purposefully avail itself of the privilege of conducting activities within the State of Texas to such an extent so as to established minimum contacts sufficient to support the trial court's exercise of general jurisdiction over Appellant.

Issue 2:    Whether MasterCraft Boat Company LLC's (Appellant's) alleged liability in this case arise out of or relates to Appellant's purposeful activity in the State of Texas so as to support the trial court's exercise of specific jurisdiction over Appellant.

Issue 3:    Whether the trial court's exercise of jurisdiction over Appellant comports with traditional notions of fair play and substantial justice.

Issue 4:    Whether the trial court erred in failing to sustain Appellant's objections to certain deposition testimony, and whether such refusal, if any, to grant Appellant's objections was harmful error (if any).

## STATEMENT OF FACTS

On August 24, 2014, Rebecca Chambers was one of eight (8) passengers, who were on-board the Appellant MasterCraft Boat Company LLC's ("Appellant") boat owned by John "Dos" Dietz ("Defendant Dietz"). Defendant Dietz was captaining / operating the Appellant boat in Nueces County, Texas. Rebecca Chambers was sitting on the bow of the Appellant's boat while it was underway, and she did suddenly and unexpectedly (from her perspective) get sucked under and run over by the Appellant's boat. Rebecca Chambers was then drawn into the boat's unguarded propeller --- and she suffered severe lacerations of her lower leg. Rebecca Chambers floated to the water's surface and found herself in a large pool of her own blood. Others screamed for "Dos" Dietz to turn the boat around to render aid, and "Dos" Dietz complied. Rebecca Chambers was floundering in her effort to save herself, and she was then aided by others as the boat came back for her. During the rescue effort, it was determined that Ms. Chambers' lower leg had been completely severed from her body -- and it could not be found. Rebecca was rushed to the hospital for appropriate medical care and treatments.

Rebecca Chambers filed this legal action on or about December 8, 2014, against Defendant Dietz and Appellant. In response to Rebecca Chambers' filing of the action, Defendant Dietz filed a general denial. In response to Rebecca

Chambers' filing of the action, Appellant filed a special appearance, motion to transfer venue, motion to dismiss on grounds of *forum non conveniens,* special exceptions, general denial, pleadings setting forth affirmative defenses, and other related / amended / supplemental pleadings.

Rebecca Chambers' current pleading on file is Plaintiff's First Amended Original Petition (and such pleading was the live pleading at the point in time when the trial court considered Appellant's special appearance). By this pleading, Rebecca Chambers has made allegations supporting this Court's general jurisdiction and specific jurisdiction over the parties in this lawsuit (including Appellant) and the subject matter of this lawsuit. With regard to Appellant, Rebecca Chambers has pleaded that Appellant is subject to Texas' courts' jurisdiction in this case because:

1. Appellant's boat involved in this lawsuit is in the State of Texas because of Appellant's purposeful, multi-million dollar internet promotional campaign directed at the State of Texas (which campaign directly caused Defendant Dietz to purchase the boat made the subject of this lawsuit); and

2. Appellant's many and other continuous and systematic contacts with the State of Texas; to wit: systematically and continuously sending

employees and managers to the State of Texas; systematically and continuously training service personnel to provide warranty work in the State of Texas (and providing such warranty work in the State of Texas); systematically and continuously providing recall services within the State of Texas; systematically and continuously training sales personnel to sell its boats in Texas; systematically and continuously sending its employees to participate in promotional events in the State of Texas; systematically and continuously signing contracts in Texas and/or with Texas individuals and/or with Texas companies; systematically and continuously signing contracts for services performable in Texas; systematically and continuously advertising in Texas; systematically and continuously conducting customer satisfaction surveys in Texas; systematically and continuously resolving disputes in Texas (whether by Alternate Dispute Resolution (ADR) or other); systematically and continuously reimbursing others for sales work / promotions in Texas; systematically and continuously partnering with others (individuals and companies) in Texas; and systematically and continuously doing business in the State of Texas for many years (including its payment of franchise taxes to the State of Texas to allow Appellant to do its business in the State of Texas (which has been quite profitable for Appellant)).

The facts of the case do clearly demonstrate that Appellant's relationship with the State of Texas. Key facts are as follows:

1. Appellant -- and the time of the incident and for many years -- contracted with four (4) companies to serve as Appellant's Texas dealerships in the State of Texas;[1]

2. Appellant's contracts with its authorized Texas dealers were (for the pertinent time period) contracts with Texas companies;[2]

3. Appellant's contracts with its authorized Texas dealers were (for the pertinent time period) contracts performable in Texas;[3]

4. Appellant ('regularly and frequently,' and for the pertinent time period) obligated itself -- and continues to obligate itself -- by way of its warranty contracts with its Texas customers (Texas residents) to provide warranty services (repairs) in the State of Texas, to pay for warranty services in the State of Texas, and to deliver warranty contracts to its Texas customers in the State of Texas;[4]

---

[1] Appellant 's authorized dealers in the State of Texas (for the pertinent time period) were: (1) Texas MasterCraft Ltd.; (2) Dockside Marine LLC; (3) Boat Town, Inc.; and (4) Texas Ski Ranch. See authorized dealership contracts (Filed under seal in the trial court); see also deposition testimony of Tim Oxley, (CR 1:271-275)

[2] See Texas Secretary of State documents (CR 1:446-456)

[3] See deposition testimony of Tim Oxley, (CR 1:314)

[4] See deposition testimony of Tim Oxley, (CR 1:309-315) ("Q. And so the [warranty] work is performable in Texas, if it's -- if the boat is taken to a Texas dealership? A. Correct . . . Q. . . . the work is going to be performed in Texas? A. Yes. . . . Q. And the payment is going to go to the company in Texas? A. We reimburse the dealer in Texas. . . . Q. So that warranty contract is delivered actually [to the boat owner] in Texas? A. Correct). See also deposition testimony of Tim Oxley, (CR 1:356)

4

5. Appellant (for the pertinent time period) has paid substantial sums to honor warranty claims made in Texas (2011: $163,000.00; 2012: $203,000.00; 2013: $191,000.00; 2014: $194,000.00; and 2015: $165,000.00); [5]

6. Appellant (continuously and systematically, and for the pertinent time period) performs its recall obligations in the State of Texas, and pays for its recall obligations in the State of Texas; [6]

7. Appellant (for the pertinent time period) contracted in the State of Texas to be listed as an additional insured on Completed Products coverage's negotiated and paid for in Texas -- and applicable to product liability cases filed in the State of Texas (thus, these are contracts performable in Texas for the benefit of Appellant);[7]

8. Appellant (though its vendor, and for the pertinent time period in question) developed a customer service index ("CSI") by surveying its Texas customers to determine Texas customers' satisfaction with its (Appellant's) product;[8]

9. Appellant's contracts (for the pertinent time period in question) obligate Appellant to come into Texas and pay claims for its

---

[5] See deposition testimony of Tim Oxley, (CR 1:355)
[6] See deposition testimony of Tim Oxley, (CR 1:316-317)
[7] See deposition testimony of Tim Oxley, (CR 1:325-330)
[8] See deposition testimony of Tim Oxley, (CR 1:318-322)

authorized Texas dealerships ("indemnity") in the event that a product defect exists with the MasterCraft product (this contract term is performable in Texas);[9]

10. Appellant has negotiated and resolved disputes (including Alternative Dispute Resolution) in the State of Texas;[10]

11. Appellant has agreed to the application of Texas law to interpretation of provisions of their contracts with Appellant's authorized Texas dealerships;[11]

12. Appellant 's contracts with its authorized Texas dealers (for the pertinent time period) gave Appellant sole discretion to define the geographic area of operations for each Texas dealership;[12]

13. Appellant's contracts with its authorized Texas dealers (for the pertinent time period) gave Appellant one hundred percent (100%) control over incentive programs offered by its Texas dealerships;[13]

14. Appellant's contracts with its authorized Texas dealers (for the pertinent time period) gave Appellant the power to set sales quotas for Appellant boat sales in Texas;[14]

---

[9] See deposition testimony of Tim Oxley, (CR 1:331)
[10] See deposition testimony of Tim Oxley, (CR 1:336-337)
[11] See deposition testimony of Tim Oxley, (CR 1:339)
[12] See deposition testimony of Tim Oxley, (CR 1:277-278)
[13] See deposition testimony of Tim Oxley, (CR 1:279)
[14] See deposition testimony of Tim Oxley, (CR 1:281-282)

15. Appellant's employee -- its regional sales and marketing manager -- made (for the pertinent time period) ten (10) to twelve (12) trips per year to the State of Texas for the purpose of meeting with and supporting Appellant's authorized Texas dealerships;[15]

16. Appellant's "local [Texas] rep" (a term used by Tim Oxley to describe Appellant's regional sales and marketing manager) travels to the State of Texas regularly and systematically to:

(a) increase Appellant's market share;

(b) counsel with each "local [Texas] dealer";

(c) provide each authorized Texas dealership with product training (training to help Texas sales representatives distinguish and promote Appellant's boats, and related training about how to close a deal);

(d) encourage local (Texas) marketing events (such events typically including Appellant's direct, in-person participation, and such events wholly controlled by Appellant); and

(e) provide stocking and merchandizing recommendations for each authorized Texas dealership. [16]

---

[15] See deposition testimony of Tim Oxley, (CR 1:291, 1:357)
[16] See deposition testimony of Tim Oxley, (CR 1:288-291, 1:294-299)

17. Appellant routinely and systematically reimburses its "local [Texas] rep" (its regional sales and marketing manager), and others, for hotel stays in Texas, meals purchased in Texas for its employees, meals purchased in Texas for its customers / authorized Texas dealerships, rent-a-cars, cellular service bills, and internet service bills;[17]

18. In addition to Appellant's regional sales and marketing manager's trips to the State of Texas (10-12 / year), Appellant's vice-president for global sales and marketing travels four (4) to six (6) times per year to the State of Texas; and Appellant's president and CEO travels one (1) to (2) times per year to the State of Texas -- and all to promote sales and marketing in the State of Texas; [18]

19. Appellant controls its authorized Texas dealership's inventory (the Appellant's boats on the sales floor, and in-stock MasterCraft parts and supplies);[19]

20. Appellant controls the days and hours of operation (for the pertinent time period) for its authorized Texas dealerships;[20]

---

[17] See deposition testimony of Tim Oxley, (CR 1:290-291)
[18] See deposition testimony of Tim Oxley, (CR 1:357-358)
[19] See deposition testimony of Tim Oxley, (CR 1: 302-303)
[20] See deposition testimony of Tim Oxley, (CR 1:304)

21. Appellant provided and/or approved (for the pertinent time period) all of the promotional and/or advertising materials to use by its authorized Texas dealerships -- to be displayed in the State of Texas;[21]

22. Appellant (for the pertinent time period) markets directly into Texas through the internet; [22]

23. Appellant (for the pertinent time period) markets directly into Texas through billboards, radio, and television through its authorized Texas dealerships; [23]

24. Appellant advertises (for the pertinent time period) in trade magazines that are regionally targeted to the Texas markets; [24]

25. Appellant paid $1,037,500.00 to "Live Nation Motor Sports, Inc." -- a Texas corporation -- as a promotional / advertising fee for events in Texas[25] (2008, 2009, and 2010); and agreed in its contract with Live Nation Motor Sports, Inc., that the agreement would "be governed by and construed according to the laws of the State of Texas"; [26]

---

[21] See deposition testimony of Tim Oxley, (CR 1: 305-306)
[22] See deposition testimony of Tim Oxley, (CR 1: 339)
[23] See deposition testimony of Tim Oxley, (CR 1:340)
[24] See deposition testimony of Tim Oxley, (CR 1: 360-361)
[25] The sponsored events occurred in Texas, and other states. Appellant -- by their promotional fee -- was entitled to display its logo on banners, to 15 second public addresses, to two (2) scoreboard mentions, to two (2) jumbotron mentions, to participation in the pit party, to distribute hand-outs, to spots on CBS's broadcasts, to a full page color advertisement in the event program, to 10 VIP, passes, to 20 complimentary tickets, and more.
[26] See deposition testimony of Tim Oxley, (CR 1:364-367) see also Oxley, (CR 1: 368)(agreeing to the "benefits and protections" of Texas law).

26. Appellant (for the pertinent time period) markets directly, and in-person (through its employees and contract employees), in the State of Texas at sponsored boat shows, clinics, and demonstration days and events;[27]

27. Appellant pays half (50%) of the cost of promoting boat shows and events in the State of Texas (as a "co-op" with its authorized Texas dealership);[28]

28. Appellant pays millions of dollars each year (for the pertinent time period) towards advertising (2011: $4.4 million dollars; 2012: $4.4 million dollars; 2013: $3.4 million dollars; 2014: $4.2 million dollars) -- from which large sums are directed at marketing in the State of Texas (since Texas is Appellant 's largest market); [29]

29. Appellant is advertising in the State of Texas every day for the past five (5) years; [30]

30. Appellant  sells many boats each year into the State of Texas -- to its authorized Texas dealerships who are Texas companies (2011:  192 MasterCraft boats sold to Texans;  2012:  151 MasterCraft boats sold to Texans;  2013:  182 MasterCraft boats sold to Texans;  2014:  136

---

[27] See deposition testimony of Tim Oxley, (CR 1:340-342, 1:351)
[28] See deposition testimony of Tim Oxley, (CR 1:342-344)
[29] See deposition testimony of Tim Oxley, (CR 1: 352) see also deposition of Jay Povlin,  (CR 1:218-220)
[30] See deposition testimony of Tim Oxley, (CR 1: 353-354)

MasterCraft boats sold to Texans; and 2015: 183 MasterCraft boats sold to Texans);[31] and

31. Appellant regards its cooperative efforts with its authorized Texas dealerships as a "partnership" (Mr. Oxley volunteered that Appellant does "characterize that [Texas dealership relationship] as a partnership");[32]

The facts speak for themselves. The Appellant's documents and sworn testimony of their employees make clear that Appellant has a significant relationship with the State of Texas.

With these factual discoveries now made of record, some candid testimony makes clear Mr. Oxley's view of his company's (Appellant's) relationship to the State of Texas. Mr. Oxley is a corporate official employed by Appellant, and he did testify, as follows:

Q. MasterCraft knows they have a lot of MasterCraft boats in Texas, and they're very purposeful in making sure that they're taking care of those customers and honoring those warranty claims?

A. Yes, I agree to that.[33]

* * * * *

---

[31] See deposition testimony of Tim Oxley, (CR 1:359)
[32] See deposition testimony of Tim Oxley, (CR 1: 345-346, 1:349-350)
[33] See deposition testimony of Tim Oxley, (CR 1: 357)

Q.	By MasterCraft's advertising, I think you would agree that MasterCraft's contacts with the State of Texas are continuous?

A.	Yes. [34]

* * * *

Q.	And systematic?

A.	Yes, using your definition of advertising where we display brochures.

Q.	And considering warranty practices of MasterCraft, those contacts with the State of Texas are also continuous?  I don't mean every day, but they're very frequent, and ongoing?

A.	I agree.

Q.	And, again, they're systematic?  The warranty contracts?

A.	Yes. [35]

*	* * * *

Q.	Is it fair to say that MasterCraft, certainly, has been -- as long as you've been with the company -- doing business in Texas.

A.	Yes.

Q.	On a longstanding basis?

A.	Yes.

---

[34] See deposition testimony of Tim Oxley, (CR 1:370)
[35] See deposition testimony of Tim Oxley, (CR 1:371-372)

Q. As a part of this longstanding business of MasterCraft in Texas, it's included marketing, correct?

A. Yes.

Q. Shipping their products to Texas, correct?

A. Yes.

Q. Performing services, including warranty services, in Texas?

A. Yes.

Q. And maintained authorized dealerships in Texas.

A. Yes.

Q. I mean, MasterCraft definitely and very purposefully wants the benefits of doing business in Texas by selling their bots there, right?

A. Yes.

Q. MasterCraft definitely, intentionally, and purposefully wants to take advantage of the Texas economy and whatever monies there are available for luxury items, such as the ski, surf, and wakeboard boats?

A. Yes.[36]

* * * *

---

[36] See deposition testimony of Tim Oxley, (CR 1:347-376)

Q.    And is it true that MasterCraft -- we've already talked about how they have a very specific market territory for each of their authorized dealers in Texas, right?

A.    Yes.

Q.    And I think that those are placed strategically so they're not overlapping with each other; fair to say?

A.    Yes.[37]

∗∗ ∗ ∗ ∗

Q.    Those are very strategic decisions that MasterCraft has made in terms of how they want and where they want their products presented in Texas?

A.    Yes.[38]

∗∗ ∗ ∗ ∗

Q.    So these contacts that we've talked about where MasterCraft is doing the advertising and the warranty claims and the different things that MasterCraft does throughout Texas, those are pervasive contact throughout the parts of the state that are your market?

A.    Yes. [39]

∗      ∗ ∗ ∗ ∗

---

[37] See deposition testimony of Tim Oxley, (CR 1:376-377)
[38] See deposition testimony of Tim Oxley, (CR 1: 377-378)
[39] See deposition testimony of Tim Oxley, (CR 1:378)

Q.    Do you think that when you look at the things that MasterCraft is doing directly in Texas, sometimes its own materials, sometimes through its dealerships, do you think that Mastercraft's contacts with the state of Texas are substantial?

A.    Yes.

Q.    And purposeful for the purpose of helping sell MasterCraft products in Texas?

A.    Yes. . . . .

Q.    I mean, MasterCraft definitely has a very specific intent to serve the Texas markets and sell their ski, wakeboard, and surf boats in Texas.

A.    Yes. [40]

Again, this evidence speaks for itself. This evidence is not contradicted by any of the documentary evidence, but rather supported by the documentary evidence.

Additional evidence was presented to the trial court. Specifically, the evidence proves that Appellant even pays franchise taxes to the State of Texas. In 2015, Appellant paid $28,843.60 in franchise taxes to the State of Texas for the privilege of its conducting business in the State of Texas.[41] Apparently, Appellant has been following this appropriate practice for a number of years (i.e., paying

---

[40] See deposition testimony of Tim Oxley, (CR 1:378-379)
[41] See Texas Franchise Tax Payment Forms produced by Appellant , (CR 1:440-445)

15

taxes to the State of Texas for the purpose of allowing Appellant to do business in the State of Texas).

Finally, the record also contains evidence of Defendant "Dos" Dietz's specific reliance upon Appellant's (MasterCraft's) Texas contacts for the purchase of the MasterCraft boat made the subject of the litigation. An affidavit[42] signed by Defendant Dietz was a part of the evidence considered by the trial court, and such affidavit makes clear that Defendant Dietz purchased the boat made the subject of this lawsuit as a direct result of Defendant Dietz's review and consideration of Appellant 's promotional materials -- provided to Defendant Dietz via internet and/or boat show promotions. Defendant Dietz's affidavit makes clear that his decision to purchase the MasterCraft boat made the subject of the litigation was "substantially driven by information that [he] obtained from the MasterCraft Boat Company's promotional website (while [he] was in Texas).

## SUMMARY OF ARGUMENT

In this case, this trial court properly exercised its powers of both specific jurisdiction -- and general jurisdiction -- over Appellant . The Appellant has been doing business in Texas for many, many years. Appellant concedes the very threshold question of 'doing business in Texas' by its payment of franchise taxes to the State of Texas, and it cannot now be heard to complain of coming to Texas.

---

[42] (CR 1:479-480)

Appellant sells its boats directly to Texas customers (including its authorized Texas dealerships) by the hundreds each year, advertises in Texas, honors warranty claims in Texas, honors recall claims in Texas, contracts in Texas, agrees to the application of Texas law when it is to Appellant 's benefit, trains sales persons to sell its boats in Texas, trains repair persons to make repairs in Texas, and -- for lack of a better phrase -- does everything it can in Texas to make money from Texans.

Moreover, the Appellant's contacts with the State of Texas directly led to Defendant Dietz's decision to purchase a MasterCraft boat for use in Texas. The affidavit of Defendant Dietz makes clear that his decision to purchase the MasterCraft boat was "substantially driven by information that [he] obtained from the MasterCraft Boat Company's promotional website (while [he] was in Texas). the affidavit of Defendant Dietz states that "the actual reason that I purchased my MasterCraft boat was because of my internet browsing on the MasterCraft Boat Company's promotional website that was accomplished while I wa in the State of Texas -- I just happened to thereafter locate my boat in the State of Florida." The trial court's exercise of specific jurisdiction is also supported.

Appellant's contacts with Texas also give rise to the trial court's exercise of general and specific jurisdiction over this Appellant. Plaintiff has properly made those allegations that triggered the trial court's exercise of jurisdiction over

17

Appellant. As such, Texas law shifts the burden of proof to Appellant to negate all potential bases for a Texas' court's exercise of its jurisdiction. Appellant completely failed to carry its burden to negate all potential bases for the trial court's exercise of jurisdiction, and thus the trial court made the proper ruling. The trial court's ruling should now be upheld on appeal.

## ARGUMENT

### 1. Plaintiff's Pleadings Support this Court's Exercise of Jurisdiction --

Texas jurisprudence is quite clear that "[t]he plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute."[43] No Texas Supreme Court ruling has directly decided the question of whether an appellate court should only consider the plaintiff's petition or also fully consider "extended . . . allegations in the petition" (such as the plaintiff's response to special appearance and/or supplements to pleadings). However, the Texas Court of Appeals (Thirteenth District of Texas), as a matter of actual practice, has historically considered all pleadings on file prior to the hearing on special appearance (including the plaintiff's pleadings responsive to the defendant's special appearance). "The meaning of the term "pleadings" must be limited at least so as to exclude matters not filed prior to the special

---

[43] *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), cert. denied, 537 U.S. 1191 (2003); see also *Frank A. Smith Sales, Inc., d/b/a Frank Smith Toyota v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 746 (Tex. App. - - Corpus Christi 2000, no pet.); *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965); *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 n.1 (Tex.App. - - Corpus Christi 1999, no pet).

appearance hearing."[44]  A plaintiff's pleading must set forth allegations sufficient to support a trial court's exercise of jurisdiction, and an appellate court properly considers all of the plaintiff's pleadings filed prior to the hearing on the defendant's motion.[45]  In this lawsuit, Appellant does not seem to complain about the sufficiency of Plaintiff's pleadings.  To the extent that any such complaint may be alleged by Appellant , Plaintiff respectfully suggests that Plaintiff's pleadings are more than adequate to support this Court's exercise of jurisdiction over Appellant .

### 2. *Legal Authority in Support of a Court's Exercise of Jurisdiction --*

Of course, there is a wealth of judicial precedent to aid this Court in consideration of the present issues.  In *American Type Culture Collection, Inc.  v. Marshall Coleman*,[46] the Texas Supreme Court provides a keen summary of some of the threshold issues.  The Texas Supreme Court is certainly capable of speaking for itself, and the Court's opinion provides guidance.

> "Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards." Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  The Texas

---

[44] *Smith Toyota*, at p. 746.  The Thirteenth Court of Appeals (Texas) considered all pleadings filed prior to the time of the hearing on special appearance.

[45] The courts favor contemplation of all of the plaintiff's pleadings (so long as the pleadings are filed prior to the hearing on the defendant's special appearance).  See *Smith Toyota*, at p. 746.

[46] 83 S.W.3d 801 (Tex. 2002), cert. denied, 537 U.S. 1191 (2003).

long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." Id. Thus, the Texas long-arm statute requirements are satisfied if exercising jurisdiction comports with federal due process limitations. Id.

"Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a nonresident defendant established "minimum contacts" with Texas and maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940). The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. Schlobohm v. Shapiro, 784 S.W.2d 355, 357 (Tex. 1990). Accordingly, we focus upon the defendant's activities and expectations in deciding whether it is proper to call it before a Texas court. Id."

"The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. Burger King Corp. v.Rudzewicz, 471 U.S. 462, 475 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). . . . It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. Id. at 230      n. 11."

"A defendant's contacts with a forum can give rise to either specific or general jurisdiction. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. Id. at 227. General jurisdiction . . ., on the other hand, allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. Id. at 228.

20

General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. Id. Coleman, at pp. 803-805.

There is no reason for the undersigned to speak on those thresholds and standards where Texas' high court has already spoken so clearly. If a defendant purposely avails itself of benefits of a forum, it only makes sense that such defendant should be amenable to the process of that forum. The minimum contacts analysis is less strict when facts support a trial court's exercise of specific jurisdiction (as compared to a 'general jurisdiction' analysis). In the present case, an application of the facts (evidence) to the law demonstrates that this Court has both specific and general jurisdiction over Appellant .

Additional case law provides further guidance:

"When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," Hanson v. Denckla, 357 U.S. [235] at 254, 78 S.Ct. [1228] at 1240 [2 L.Ed.2d 1283 (1958)], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owner or to others." Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).

". . . a defendant has "purposefully availed itself of the privilege of conducting activities" in the forum state if the non-resident defendant sells its product to an independent distributor and "there is a reasonable expectation that the product will enter the forum state." Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir. 1980).

The Texas Supreme Court and United States Fifth Circuit opinions fall in line with each other (and further fall in line with the United States Supreme Court opinions relating to a court's exercise of jurisdiction). The thresholds / parameters for this Court's exercise of jurisdiction are quite clear.

With definitive law and powerful evidence, fewer words may be exchanged in argument. On the other hand, the undersigned is professionally obligated to make argument on behalf of his client. As stated in Appellant 's brief:

"The plaintiff has the initial burden to "plead sufficient allegations to confer jurisdiction." Id. (citing American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex.2002)). Once that burden is met, the defendant seeking to avoid the court's jurisdiction takes on the burden to negate "all potential bases for jurisdiction pled by the plaintiff." Id.[47]

Plaintiff has properly pleaded facts in support of this Court's exercise of jurisdiction over Appellant . As such, it is now Appellant 's burden to negate all possible bases for this Court's exercise of jurisdiction. Appellant -- for the reasons set forth herein -- cannot negate all possible bases for this Court's exercise

---

[47] Appellant 's pleading is referencing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)(citing *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002).

of jurisdiction. To the contrary, all of the law and all of the facts bode in favor of this Court's exercise of jurisdiction over Appellant .

### 3. *This Court has Specific Jurisdiction over Appellant --*

In Coleman, the high Court has made clear that for a court to exercise specific jurisdiction over a non-resident defendant (such as Appellant ), the claimant must present evidence that:

> "(1) the defendant's contacts with the forum must be purposeful, and
> (2) the cause of action must arise from or relate to those contacts."

In this case, Appellant has a huge number of high quality purposeful contacts with the State of Texas. Mr. Oxley, Chief Financial Officer, Secretary, and Treasurer for Appellant since 2012, has testified that these contacts are "purposeful" (and have been purposeful during his eight (8) year tenure with the company). Such contacts with the State of Texas include, but are not limited to, boat shows in the State of Texas and internet promotions in contemplation of Appellant 's clear desire to sell boats to Texans (one of its largest markets in the United States).[48] Defendant Dietz, on information and belief, purchased his MasterCraft boat because of Appellant 's purposeful contacts (internet and/or boat show promotions) with the State of Texas (and its customers such as Defendant Dietz).

Appellant 's annual multi-million dollar advertising investment worked. Appellant 's efforts caused its product (its boat) to be purchased, and brought to the

---

[48] See deposition of Jay Povlin, (CR 1:218-220)

23

State of Texas -- but for which this incident made the subject of this lawsuit would not have occurred. Clearly, the cause of action filed on behalf of Plaintiff 'relates to Appellant 's contacts' with the State of Texas.

Judicial authority supports this Court's exercise of specific jurisdiction over Appellant. The Appellant has many purposeful contacts with the State of Texas (as noted herein). These contacts with the State of Texas were (and continue to be) purposeful. Some of these contacts include boat shows and internet promotional materials -- and these specific efforts by Appellant caused the purchase of the boat made the subject of this lawsuit (on information and belief). Appellant 's purposeful contacts with the State of Texas "relate" to Plaintiff's cause of action. Appellant has certainly not carried its burden to negate this Court's exercise of jurisdiction. Thus, this Court is must properly exercise its power and authority over the parties made the subject of this lawsuit (including Appellant ).

### 4. This Court has General Jurisdiction over Appellant --

In this case, this Court should also exercise its powers of general jurisdiction over Appellant. General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic."[49] In this case, Appellant 's contacts with the State of Texas are continuous and systematic. By way of example, but without

---

[49] See *Coleman,* at pp. 803-805.

limitation, Appellant very deliberately works and invests for its company's sales and success in Texas markets. Appellant :

1. purposefully contracts with Texas companies to be Appellant 's authorized dealerships in Texas;

2. purposefully enters into these authorized dealership contracts with Texas companies, performable in Texas, which are expressly (by agreement with Appellant ) governed by Texas law;

3. purposefully enters into other promotional contracts with Texas promotional companies that are performable in Texas;

4. purposefully contracts with its Texas customers (Texas MasterCraft boat owners) to provide warranty services (all these contracts performable in Texas);

5. purposefully agrees to perform recall services with its Texas customers (Texas MasterCraft boat owners) -- such recall services performable in Texas;

6. purposefully pays money to the State of Texas (its franchise tax payments) for the privilege of doing its business in the State of Texas;

7. purposefully spends millions of dollars to advertise and promote, including a focus on Texas with some of its selection of trade magazines, boat shows, Texas events, and more (especially in light of the fact that Texas is Appellant 's largest market (or one of them)) to sell boats to Texans;

8.  contracts with Texas companies (its authorized dealerships) to be listed as a named insured on insurance contracts performable in Texas (for claims filed in Texas);

9.  pays for customer satisfaction surveys of its Texas customers;

10. indemnifies its authorized Texas dealerships in Texas;

11. negotiates and resolves claims / disputes, in Texas, with its authorized Texas dealerships;

12. strategically allocates its Texas markets to specific Texas companies for the sale of MasterCraft boats in Texas;

13. controls 100% of all advertising content displayed for Appellant in Texas;

14. sends its regional sales and marketing manager to Texas approximately ten (10) to twelve (12) times per year to promote sales in Texas;

15. trains sales persons to sale its boats in Texas;

16. trains repair persons to make repairs of its boats in Texas;

17. systematically reimburses its employees for sales related activities in Texas (hotel costs, rent-a-car costs, dining costs, etc.);

18. controls its authorized Texas dealerships' inventory on the floor, advertising, days and hours of operation, and more;

19. markets in Texas by way of internet, boat shows, events, billboards, radio, and published advertising materials (some of which is directly delivered, and some of which flows through the authorized Texas dealerships);

20. and more (see details of evidence listed above).

"The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction." *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Appellant 's relationship with the State of Texas cannot be said to be "too attenuated to support jurisdiction." "The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). The Appellant has "purposefully avail[ed]" itself of the privilege of conducting business in Texas -- and has, by its many contracts with Texas companies, invoked the benefits and protections of Texas laws. "When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. [235] at 254, 78 S.Ct. [1228] at 1240 [2 L.Ed.2d 1283 (1958)], it has clear notice that it is subject to suit . . . ." In this case, Appellant has been doing business in the State of Texas for years, and is on clear notice that it is subject to the laws of the State of Texas. , and can act to alleviate

27

> "Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owner or to others." Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).

> ". . . a defendant has "purposefully availed itself of the privilege of conducting activities" in the forum state if the non-resident defendant sells its product to an independent distributor and "there is a reasonableexpectation that the product will enter the forum state." Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir. 1980).

In this case, Appellant 's sale of boats into Texas is "not simply an isolated occurrence, but arises from [MasterCraft's] efforts . . . to serve directly or indirectly, the market for its product . . . ." As such, Appellant is definitely subject to the laws of the State of Texas, and this Court's jurisdiction.

The Appellant has clearly failed in its burden to negate all possible bases for this Court's exercise of jurisdiction. As such, this Court has jurisdiction over Appellant .

In this case, there is substantial evidence to prove that Appellant is pushing its products in Texas (and here to stay in Texas). As noted herein above, Appellant contracts with its authorized Texas dealerships in Texas, sells hundreds of boats per year to these Texas dealerships (which are Texas companies), spends millions of dollars per year to market their boats (in Texas, and other states),

contracts and pays warranty claims in Texas, contracts and pays recall claims in Texas, sends its employees to Texas on a regular and frequent schedule, pays taxes to the State of Texas to do business in Texas, contracts to assure applicability of insurance contracts to claims made in Texas, trains sales persons to sell its products in Texas, trains repair persons to repair its products in Texas, and more and more in the State of Texas.  Appellant  is subject to the laws of the State of Texas (and has agreed to be subject to such laws by the contracts it signs), and thus is subject to this Court's exercise of jurisdiction.

## THIS COURT'S EXERCISE OF JURISDICTION DOES NOT OFFEND TRADITIONAL NOTIONS OF FAIR PLAY

Even if a non-resident defendant has established minimum contacts within the forum state (e.g., Texas), the non-resident defendant should not be hailed into Texas court if to do so would violate notions of "fair play and substantial justice."[50]  As such, this court may consider various factors when evaluating whether notions of "fair plan and substantial justice" are offended.  The court may consider:  (1)  the burden upon the defendant;  (2)  the interest of the forum state in adjudicating the dispute;  (3)  the plaintiff's interest in obtaining convenient and effective relief;  (4)  the interstate judicial system's interest in obtaining the most

---

[50] *Asahi Metal industiral Company, Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 113-115 (1987);  *Burger King,* 471 U.S. at 476;  *Guardian Royal,* 815 S.W.2d at 231.

efficient resolution of controversies; and (5) the shared interests of the several states in furthering substantial social policies.[51]

### 1.    *The burden upon Appellant --*

At the risk of stating the obvious:  If Appellant can sells boat to Texans, sell boats to Texas companies (its authorized Texas dealerships), advertise in Texas, honor warranty and recall claims in Texas, enter into contracts in Texas that are performable in Texas, indemnify Texas companies for events in Texas, train sales persons to sell boats in Texas, train repair persons to repair boats in Texas, send their employees and managers to sell its products in Texas, and make franchise tax payments to the State of Texas -- then Appellant should not even be heard to suggest that litigating in Texas would be a burden.  It would be disingenuous for Appellant to reep the rewards of the business in Texas, and then duck for cover when a claim gets filed in Texas.  There is no more burden upon Appellant to litigate in Texas than for Appellant to conduct its business in Texas (which it has done for years).  Appellant already has attorneys of its choosing in Houston, Texas, and it is no burden for such a milti-national, multi-million dollar company to appear in a Texas court.

---

[51] *World-Wide Volkswagen*, 444 U.S. at 292; *Burger King,* 471 U.S. at 477; *Asahi,* 480 U.S. at 113.

**2.** ***The interest of Texas in Adjudicating this Dispute in Texas --***

The State of Texas has an interest in supporting the legal rights of those residents of the State of Texas. This has long been the public policy supported by our legislature, and by our judicial system. Texas residents (such as Rebecca Chambers and John Dietz) have a right to expect that controversies arising in Texas will be adjudicated in their home courts (not in a jurisdiction or venue of another).

**3.** ***Plaintiff's Interest in Obtaining Convenient / Effiective Relef --***

Plaintiff now has this claim filed against Appellant and Defendant Dietz. In its present posture, this multi-party dispute will be resolved in Nueces County, Texas (the location where the incident occurred). This makes sense. If Appellant 's special appearance is granted, then Plaintiff's claims against Defendant Dietz would be adjudicated in Texas -- but Plaintiff's claims against Appellant would be adjudicated in Tennessee.

Plaintiff's legitimate interests to have the now-pending disputes resolved are served by keeping this lawsuit in Nueces County, Texas. It is more convenient and effeicient to the parties (certainly to Plaintiff and Defendant Deitz), and much more convenient and efficient than trying one case in Texas and another case in Tennessee. Thus, this factor bodes in favor of keeping this case in Nueces County, Texas (also).

***4.***     ***Interstate Judicial System's Interest in Obtaining Efficient Resolution***

Both Texas and Tennessee courts must support a process that allows for the efficient resolution of all now-pending claims. The State of Tennessee cannot exercise its jurisdiction over Defendant Dietz. Both Texas and Tennessee courts would likely agree that Texas is the most convenient forum that may allow a comprehensive / efficient adjudication of the disputes made the subject of this lawsuit. The incident occurred in Texas. Many of the witnesses reside in Texas. The law enforcement personnel who investigated the incident are in Texas. The doctors attending to Rebecca Chambers are in Texas. Medical records are in Texas. Far and away, both Texas and Tennessee courts should agree that this dispute can most efficiently be resolved in the State of Texas.

***5.***     ***Shared Interests of States to Further Social Policies --***

Both Texas and Tennessee courts have a shared interest in advancing social policies for their residents. Only Texas courts have this relationship to Plaintiff and Defendant Dietz. The Texas courts have an interest in deciding disputes that arise between Texas residents.

All factors strongly support the conclusion that this Court's exercise of its jurisdictional powers over Appellant would not 'offend traditional notions of fair play and substantial justice.' The incident made the subject of this lawsuit occurred in Nueces County, Texas. The claimant in this case is a Texas resident.

One of the defendants in this lawsuit is a Texas resident. All parties have -- for many years -- agreed to subject themselves to the laws of the State of Texas. This case needs to stay in Texas (for all of the reasons set forth herein above).

## CONCLUSION

For the reasons set forth herein above, this Court may properly exercise its powers of specific jurisdiction and general jurisdiction over Appellant . This Appellant has clearly been engaged in business in the State of Texas (for many years) -- and any pretense that Texas law somehow allows Appellant to reap the benefits of doing business in Texas while avoiding any consequences is flawed. The Appellant is subject to our Texas courts' rule of law.

WHEREFORE, PREEMISES CONSIDERED, Plaintiff prays that Appellant 's special appearance be denied, that this court maintian this case on its docket, that Plaintiff be granted such other and further relief to which Plaintiff may be justly entited (both at law and in equity), for for such other reief as is just and right.

Respectfully submitted,

Law Office of Douglas A. Allison
403 N. Tancahua
Corpus Christi, Texas 78401
Phone:  361/888-6002
Fax:  361/888-6651

By: */s/ Douglas A. Allison*
Douglas A. Allison
State Bar No. 01083500

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded on this 26th day of April, 2016, via Facsimile to the following counsel of record, in accordance to Texas Rule of Appellate Procedure 9.5:

Via Facsimile:  (713) 953-9470
Mr. Michael J. Wray
LEGGE, FARROW, KIMMITT, MCGRATH & BROWN, L.L.P.
5151 San Felipe, Suite 400
Houston, Texas 77056
ATTORNEY FOR APPELLANT
MASTERCRAFT BOAT COMPANY, LLC

Via Facsimile: (210) 340-9888
Mr. Larry J. Goldman
GOLDMAN & ASSOCIATES PLLC
10100 Reunion Place, Suite 800
San Antonio, Texas  78216
ATTORNEY FOR DEFENDANT
JOHN DIETZ

*/s/Douglas A. Allison*
Douglas A. Allison

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(2)(B)(3), I certify that this document contains 7721 words.

/s/Douglas A. Allison
Douglas A. Allison